UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VIJAY RATILAI PATEL, )
)
                Plaintiff, )
)
vs. ) 07 C 6557
)
PATRICK BOGHRA, VICTOR BOGHRA, )
AMAR NAGEALLE, and PC PRODUCTS )
& SERVICES, )
)
                Defendants. )

# **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

      This matter comes before the court on the motion of Defendants PC Products & Services ("PC Products"), Patrick Boghra ("CEO Boghra"), Victor Boghra ("Boghra"), and Amar Nagealle ("Nagealle") to dismiss Plaintiff Vijay Ratilai Patel ("Patel")'s Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, Defendants' motion to dismiss pursuant to 12(b)(1) is denied and Defendants' motion to dismiss pursuant Rule 12(b)(6) is granted.

## BACKGROUND

In 2000, Software System Inc. sponsored Patel's nonimmigrant H-1B visa ("Visa") and later hired him as a program analyst. Patel, an Indian citizen, was set to make $44,000 a year at Software Systems Inc.

It is alleged in the Complaint that in May 2001, CEO Boghra, an Illinois resident, CEO and part owner of PC Products[1] offered to employ Patel as a program analyst with PC Products. Patel was offered an annual salary of $44,000 as well as overtime and holiday benefits. According to Patel, PC Products also offered to pay the attorney's fees he incurred to amend his Visa so that it reflected his employment with PC Products.

We are obligated to assume the truth of the factual allegations for purposes of consideration of the motion. Sometime after PC Products hired Patel, the company informed him that it could no longer afford to pay him $44,000 per year, overtime, or holiday benefits. It also told Patel that it would no longer pay the attorney's fees ($14,355) he incurred in processing his Visa. According to Patel, PC Products further explained that if he did not agree to a lesser salary and did not forego his overtime and holiday benefits, his Visa would expire and he would have to leave the

---

[1] PC Products is located in Roselle, Illinois and has its principal place of business in Illinois.

United States. To avoid this situation, PC Products explained that it would continue to pay Patel $44,000 per year but that he would be required to pay the company back $1,000 each month. PC Products allegedly informed Patel that if he rejected its offer, it would refuse to give him back his Visa and thus prevent him from obtaining employment elsewhere.

Patel agreed to PC Products's offer and paid it an average monthly amount of $1,000 from March 2003 to May 2006. Patel also made lump sum payments to PC Products during that time. Patel estimates that the difference between his original salary and benefits and the altered salary and benefits he ended up receiving total $56,000.

In June 2006, PC Products terminated Patel after he informed it that he could no longer afford to pay it $1,000 per month. According to Patel, the sole reason for his termination was due to his refusal to pay PC Products $1,000 a month; it was not because he failed to perform his employment duties in a minimally satisfactory way. PC Products thereafter denied Patel's requests for his Visa. As a result, Patel allegedly now faces deportation to India.

Patel alleges that PC Products's actions cost him $100,000 in wages, benefits, and attorneys fees. Specifically, Patel alleges that Defendants were to employ Patel

until March 2008. Patel alleges that the lost wages he suffered from June 2006 to March 2008 total $46,000.

In November 2007, Patel filed suit against Defendants. Five days later, he amended his complaint. On February 14, 2008, Defendants filed a motion to dismiss Patel's First Amended Complaint. This motion to dismiss was mooted by Patel's March 5, 2008, request to amend his complaint for a second time. Patel's Second Amended Complaint alleged the following five counts against Defendants: Count I: Breach of Contract; Count II: Wrongful Termination; Count III: Breach of Fiduciary Duties; Count IV: Equitable Estoppel; and Count V: Constructive Trust. The sole basis alleged for federal jurisdiction in this case is diversity, pursuant to 28 U.S.C. § 1332; Patel maintains that he is a citizen of India and that Defendants are citizens of Illinois.

Defendants filed a motion to dismiss Patel's Second Amended Complaint on April 15, 2008. On May 1, 2008, two new attorneys for Patel filed appearances and requested that Patel be given an extension of time to respond to Defendants' motion. We granted Patel's attorneys' request; Patel was given two more weeks to respond to Defendants' motion.

Included in Patel's response to Defendants' motion to dismiss was a request for leave to amend his complaint for a third time. Patel requests that we grant him leave

to amend his complaint so as to include the following five counts: 1) Hobbs Act; 2) Unjust Enrichment; 3) Conversion; 4) Violation of Immigration Regulations; and 5) Fraud. The request to amend, coming as part of Patel's answer, is denied as improperly presented.

## DISCUSSION

### I. Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)

*A. Legal Standard*

We must first consider Defendants' Rule 12(b)(1) challenge to our jurisdiction before we consider their Rule 12(b)(6) arguments because if we do not have jurisdiction, the additional dismissal grounds become moot and need not be adjudicated. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is to dismiss claims over which a federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. *In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When a defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1), the

plaintiff must support his allegations with competent proof of jurisdictional facts. *Thomson v. Gaskillwsa*, 315 U.S. 442, 446 (1942). In reviewing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1209, 1210 (7th Cir. 1996).

*B. Discussion*

Defendants argue that Patel's suit should be dismissed pursuant to Rule 12(b)(1) because his complaint fails to establish that there is complete diversity between the parties and that the amount in controversy exceeds $75,000. Pursuant to 28 U.S.C. § 1332(a)(2), district courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000...and is between...citizens of a State and citizens or subjects of a foreign state."

1. <u>Diversity</u>

Defendants do not dispute that they are citizens of Illinois. They do however argue that Patel is a citizen of Illinois. Consequently, the question is whether Patel has shown by competent proof that he is not a citizen of Illinois but of India.

Patel's Republic of India passport ("Patel's Passport"), which is attached to the Second Amended Complaint as Exhibit A, corroborates Patel's allegation that he

is a citizen of India; it was issued on January 7, 1999, and expired on June 1, 2008, and identifies Patel's nationality as Indian.

Despite this proof, Defendants argue that evidence in the record contradicts Patel's assertion that he is a citizen of India. Defendants point to Exhibit B, a United States Department of Justice form Patel attached to his Amended Complaint entitled: "Notice of Entry of Appearance as Attorney for Representative" in support of their contention. Specifically, Defendants argue that this form is proof that Patel is either a citizen of the United States or an alien lawfully admitted for permanent residence in the United States. Patel argues otherwise.

A close look at Exhibit B demonstrates that it does not in fact contradict Patel's assertion that he is a citizen of India. This is because the portion of Exhibit B which states: "(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)" refers to PC Products; not Patel. This fact is corroborated by the top portion of Exhibit B which states that PC Products was the entity being represented by the attorney; not Patel.

Further proof of Patel's assertion is demonstrated by the document that follows Exhibit B: "PC Products's Petition for a Nonimmigrant Worker" form (the "Petition"). The Petition indicates that in May 2001 PC Products made a request to

extend Patel's then-current *nonimmigrant* Visa, which was set to expire in August 2002, to June 2004. This evidence supports Patel's assertion that he is a citizen of India and directly contradicts Defendants' position that Patel is a permanent resident alien. Consequently, Defendants arguments concerning the Judicial Improvements Act, which amended § 1332(a) in 1988, are unpersuasive as they apply only to permanent resident aliens, which we are convinced Patel is not.

We are also not persuaded by Defendants' argument that diversity jurisdiction does not exist in this case because Patel did not assert it in his original complaint. "It is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are considered *functus officio*." *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998). As such, we find that Patel has sufficiently demonstrated that he is in fact a citizen of India; not a citizen of the United States. Consequently, complete diversity exists pursuant to 28 U.S.C. § 1332(a)(2).

2. Amount in Controversy

Defendants next argue that Patel's allegations concerning the amount in controversy are insufficient to allow this court to exercise subject matter jurisdiction of this case under § 1332. Ordinarily, a plaintiff's good faith assertion of the amount in controversy will suffice. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S.

283, 288 (1938). Courts must accept this assertion on the face of the pleadings unless "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *Id.* at 289. However, when the court or the opposing party questions the facts supporting the existence of jurisdiction, the "proponent of federal jurisdiction must...prove those jurisdictional facts by a preponderance of the evidence" and "only if it is 'legally certain' that the recovery...will be less than the jurisdictional floor may the case be dismissed." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

Patel contends that the allegations in his complaint sufficiently prove that the amount in controversy exceeds $75,000. Patel specifically alleges in his Second Amended Complaint that Defendants: 1) extorted $56,000 from him; 2) forced him to pay $14,355 for immigration legal fees; 3) required him to pay $1,000 per month from March 2003 through May 2006 and other lump sum amounts; 4) wrongfully terminated him from a job that paid $44,000 a year; 4) cost him over $100,000 by breaching their agreement with him; 5) owed him lost wages in the amount of $46,000 from June 2006 through March 2008; and 6) also owe him punitive damages.

Defendants alternatively argue that Patel's claims overlap each other and do not total an amount greater than $75,000. They also contend that it is improper to

include Patel's alleged punitive damages in the amount in controversy because such damages are not recoverable in contract actions and are not favored in Illinois.

While we agree with Defendants that certain damage allegations overlap, it is evident from Patel's Second Amended Complaint and the attached exhibits that the jurisdictional floor has been met; Patel intends to collect the $30,000 he paid Defendants from March 2003 to June 2006, the $14,355 he paid out in attorneys' fees, and $46,000 in lost benefits. Thus, even if Patel's alleged punitive damages are ignored, the total of these alleged damages ($90,355) exceeds the jurisdictional amount. Consequently, federal jurisdiction exists in the instant case.

## II. Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendants next contend that Patel's complaint should be dismissed because each of his state law claims fails to adequately state a cognizable cause of action.

### *A.    Legal Standard*

Fed. R. Civ. P. 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins*

*v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

  B. *Discussion*

**<u>Count I: Breach of Contract</u>**

  Count I of Patel's Second Amended Complaint alleges that Defendants breached two contracts with him. The first breach allegedly occurred when Defendants refused to pay Patel an annual salary of $44,000 a year and overtime and holiday benefits (the "Employment Agreement"). The second breach allegedly occurred when Defendants refused to pay for the attorneys' fees he incurred in obtaining an immigration attorney (the "Attorneys Fees Agreement").

  In order to properly allege a breach of contract action in Illinois, a plaintiff must plead the following essential elements: (1) the existence of a valid and enforceable contract, (2) the defendant's breach of the contract, (3) plaintiff's performance, and (4) plaintiff's injury. *Allstate Ins. Co. v. Winnebago County Fair Ass'n, Inc.*, 475 N.E.2d 230, 233 (Ill.App.Ct. 1985). Where there is an at will

contract an employer can terminate the employee for good cause, bad cause, or no cause. *Shelton v. Ernst & Young, LLP*, 143 F.Supp.2d 982, 992 (N.D.Ill. 2001).

Patel concedes that his Employment Agreement with Defendants was at will. However, he argues that despite being an at will employee for PC Products, an enforceable Employment Agreement arose from PC Products's sponsorship of Patel's Visa. Patel relies on *DerKervorkian v. Lionbridge Technologies, Inc.*, 2006 WL 197320 (D. Colo. 2006), in support of this position.

We are unpersuaded by *DerKervorkian* as it is a Colorado District Court case that contradicts Seventh Circuit law. In *Geva v. Leo Burnett Company, Inc.*, 931 F.2d 1220, 1224 (7th Cir. 1991), the Seventh Circuit held that an employer's petition to the Immigration and Naturalization Service ("INS") for an employment Visa for a potential immigrant employee does not alone constitute a promise on which the potential employee can reasonably rely. *Id.* Without a valid promise there can be no enforceable contract. As such, Patel has failed to show that the Employment Agreement is an enforceable contract. Therefore, because Patel's complaint fails to properly allege the existence of an enforceable contract or a breach of such contract, Count I of his Second Amended Complaint is dismissed.

## Count II: Wrongful Termination

Count II of Patel's Second Amended Complaint alleges a wrongful termination cause of action. Although "Illinois does not permit a terminated employee-at-will to sue his employer generally for wrongful discharge...such an employee may bring an action for retaliatory discharge." *Banks v. Chicago Bd. of Educ.*, 895 F.Supp. 206, 209 (N.D. Ill. 1995). To properly state a retaliatory discharge, the employee must demonstrate 1) that he was dismissed, 2) in retaliation for his activities, and 3) that the dismissal was in contravention of a clearly mandated public policy. *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 875 (Ill. 1991). There are only two types of cases in Illinois where "clearly mandated public policy" exists: 1) cases where the employee suffered an injury and was later discharged after or in anticipation of filing a claim under the Workers' Compensation Act and 2) cases where the employee was discharged because he reported illegal conduct on the part of the employer. Patel's Second Amended Complaint fails to allege that he was discharged because he filed or intended to file a claim under the Worker's Compensation Act or because he reported that PC Products engaged in illegal activity. Consequently, Patel has failed to properly allege a wrongful discharge claim and Count II of his Second Amended Complaint must be dismissed.

## Count III: Breach of Fiduciary Duty

Defendants next attack Patel's breach of fiduciary duty claim. To state a claim for breach of fiduciary duty, a plaintiff must establish: 1) the existence of a fiduciary duty; 2) breach of that fiduciary duty; 3) and that such breach proximately caused plaintiff's injuries. *Neade v. Portes*, 793 N.E.2d 496, 502 (Ill. 2000).

Here, Patel argues that Defendants owed him a fiduciary duty with regard to the money that they took from him. Patel again cites *DerKervorkian* in support of his position. As previously mentioned, we do not find this case persuasive and will look to Illinois law to guide us. In Illinois, a fiduciary duty may exist through operation of law or it may be proven to exist by the party asserting it through clear and convincing evidence. *See Gross v. University of Chicago*, 302 N.E.2d 444, 453 (Ill. App. 1973). If a duty does not exist by operation of law, the proponent must show the existence of "confidence reposed by one side and domination and influence exercised by the other." *Id.*

An employer does not owe an employee a fiduciary duty simply because they have entered into an employer/employee relationship together. *Id.* at 454. Patel's allegations that "in taking, holding and using money received from the plaintiff, defendants entered into a relationship with plaintiff premised on trust and confidences, and undertook fiduciary obligations with regard to all such money" do

not establish with clear, strong, and unequivocal proof that Defendants acted in a way so as to dominate and influence him. Rather, Patel asserts that Defendants took his money because they could not afford to pay him his full salary and sought to keep his Visa current. This does not create a fiduciary duty. Accordingly, Count III of Patel's Complaint is dismissed.

**Count IV: Equitable Estoppel**

Defendants next contend that Patel insufficiently pled an equitable estoppel claim. To properly state an equitable estoppel claim a plaintiff must allege the existence of an unambiguous promise, reliance by the promisee, which was expected and foreseeable by the promisor, and that the promisee's injury resulted from his reliance in fact. *Geva*, 931 F.2d at 1223. As we mentioned above, the Visa petition did not constitute a promise by Defendants to employ Patel. Consequently, it would have been unreasonable for Patel to rely on this document with regard to his annual salary. As a result, Count IV of Patel's Second Amended Complaint is dismissed.

**Count V: Constructive Trust**

An action for constructive trust is not one for recovery or compensation under any theory or tort of contract law. *People ex. rel. Daley v. Warren Motors, Inc.*, 483 N.E.2d 427, 431 (ILL. App. 1985), *aff'd* 500 N.E.2d 22 (1985). Rather, it is a restitutionary remedy aimed at the return of property to the party to whom the

property justly belongs from one who has obtained the property by some form of wrongdoing. *Id.* Generally, the wrongdoing requirement is met by allegations of fraud or an abuse of a confidential or fiduciary relationship. Such a relationship "exists where there is a special confidence reposed on one side and a resulting superior knowledge and influence on the other." *A.T. Kearney, Inc.*, 479 N.E.29 at 1332.

Having already determined that Patel has not alleged facts to demonstrate that Defendants took his money in violation of a fiduciary duty or by some form of wrongdoing, Patel's constructive trust count is also dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to 12(b)(1) is denied and Defendants' motion to dismiss pursuant Rule 12(b)(6) is granted.

Charles P. Kocoras
United States District Judge

Dated:   June 18, 2008